[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case came to this court on a limited contested dissolution of marriage. The plaintiff, Nancy A. Contacessi, whose maiden name was Caruso, and the defendant, Frank Contacessi, were married on July 1, 1979 in Trumbull, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least 12 months preceding the date of the filing of the complaint.
The parties have two minor children issue of their marriage, Lucille Marie Contacessi born January 26, 1982 and Christina Ann born December 26, 1986. No other minor children have been born to the wife since the date of the marriage. Neither of the parties is a recipient of state aid.
The accountant, Mr. Rutkowski, testified. He indicated that the wife's business, which was a beauty salon known as Town House Hair Stylists, grossed $82,916.00 in 1991. The cost of goods sold were approximately $66,916.00. She netted out, therefore, on Schedule C of her tax return approximately $16,000.00. Because of various deductions and the like, she paid no income tax but had a Social Security tax liability.
The testimony from the accountant indicated that in 1990 the husband grossed from his business, which was a painting and decorating business, $22,201.00. He netted out $9,980.00. The wife, for 1990, had gross sales of $83,734.00 and netted out CT Page 4834 $8,063.00. For 1989, the husband grossed in his business $26,756.00 and netted out $11,773.00. The wife on gross sales in her business for 1989 earned $81,013.00 and netted out $6,397.00. In 1988 the husband earned $36,567.00 from his business and netted out $19,321.00. The wife had gross sales in her business of $87,842.00 and netted out $13,072.00.
What is clear is that the parties have not had large incomes over the years. Despite this fact, they have managed to basically pay their bills and save some money. The accountant testified, based on his training and experience, that in his opinion the wife's business was worth somewhere between $20,000.00 and $25,000.00. This testimony was uncontradicted by the husband, and, in fact, the wife shows the value of her business on her financial affidavit to be $20,000.00.
The uncontradicted testimony of Pamela Burgers (and confirmed by the husband) was that, during a period of time from August of 1987 through January of 1988, the husband had a sexual relationship with Pamela Burgers. The husband's version of the relationship was that it was nothing. He told his wife about it, and she forgave him and they carried on their lives. The wife's version, which is the more credible version, is that this had a devastating effect on her and the marriage and led to its breakdown.
It is clear to this court that the testimony of the wife is the more credible and that, in fact, the husband's adultery, gambling and staying out caused the breakdown of the marriage as the wife perceived it.
Presently, the husband is a self-employed painter and shows gross weekly income of $112.45 and net weekly income of $103.85. His current affidavit shows no pension and retirement plan. His affidavit filed with the court dated May 23, 1991, approximately a year ago, showed an IRA of $7,700.00. Its absence was not explained by the husband during the course of the trial.
There is substantial dispute between the parties concerning the acquisition of the first premises owned by them known as the two family house on Hastings Street. The wife's father, Mr. Caruso, who was presented on rebuttal to clarify, only confused the issue. He then basically recanted his testimony through the wife's attorney. Neither of the parties produced documents that were helpful in reconstructing the purchase of that property. What is clear, however, is that after the property was sold the proceeds that were received approximated somewhere between $58,000.00 and $60,000.00. Those proceeds were clearly used to pay down the mortgage existing on CT Page 4835 the premises at 28 Craig Drive, Monroe, Connecticut, by $40,000.00. The remainder of it was spent in one fashion or another.
The husband testified during the trial that he did substantial work to the house. He indicated that, among other things, he put in a skylight, he put on an addition in the back, he remodeled the kitchen, he tiled the kitchen, he did ceilings and many other items. He never put a financial value on those items to assist the court.
The court has listened to the witnesses and reviewed all the exhibits in the case. In addition, the court has taken into consideration all the criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute; 46b-82, the alimony statute; and46b-84, the child support statute. Accordingly, the court orders as follows:
1. The court grants a dissolution of marriage on the grounds of irretrievable breakdown.
2. Custody of the minor children to the wife with reasonable and liberal rights of visitation with the minor children for the husband.
 The court finds that the guidelines provide for a minimum of $135.00 to be left to the husband as the self-support reserve. He does not have that amount of money. He has proposed in his claims for relief dated May 19, 1992 that he pay $30.00 per week for each of the minor children. The court will accept that recommendation and order him to pay $30.00 per week per child. This means the court deviates from the guidelines since it finds it is in the best interest of the husband to provide support for the children and for them to receive it.
 Because this court believes that the husband should be paying more support for his wife and children when he begins work, this court requires that the husband submit to the wife a monthly statement under oath indicating the gross money received each month from his work. The husband is to file a copy of his tax returns with his wife at the time he files his tax returns with the government. The tax return and the statements shall be made under oath as to their accuracy. The court leaves to some future judge the question of whether or not there has been a substantial change in circumstances to allow a modification.
3. The court orders the husband to pay to the wife $1.00 per CT Page 4836 year alimony until December 20, 2004 or the earlier death of the wife or the remarriage of the wife or the cohabitation of the wife under the statutes.
4. The parties have agreed, and the court accepts their agreement and makes it an order of the court that the wife shall be the sole and exclusive owner of all of the personal property on the premises except for the following which shall be the property of the husband and are to be removed by June 19, 1992:
a. family room furniture;
b. 23,000 BTU air conditioning;
c. stereo and speakers;
d. wall unit (refinished) downstairs;
e. reclining chair lounge;
f. 20 inch color T.V.;
g. kitchen table — second set — Aunt Mary's;
h. lawn tractor;
i. small lawn mower;
j. weed wacker;
k. battery charger;
l. tools;
m. wheelbarrow;
n. sofa and end tables in family room;
o. family pictures;
p. second refrigerator;
q. glasses and wine goblets;
r. hunting rifle;
s. exercise equipment and weights.
5. The wife is ordered to have exclusive possession of the CT Page 4837 premises at 28 Craig Drive, Monroe, Connecticut, with the children until the house is sold. The house is ordered sold six months after the last child reaches the age of 18 years. The house is ordered sooner sold if the wife remarries, cohabits under the statutes or dies. The net proceeds from the sale of the house are to be divided 80 per cent to the wife and 20 per cent to the husband. Net proceeds are defined as the amount received after the first mortgage is paid off in the approximate present sum of $31,506.00 and the home equity loan of $2,000.00. Also deducted from the gross sales price shall be normal costs of the sale, including brokerage commission, attorney's fees for the sale, real estate conveyance taxes and like normal costs of the sale.
6. The minor children are designated as irrevocable beneficiaries of the father's existing life insurance as shown on his affidavit being Old Line Life Insurance Company in the sum of $100,000.00. This amount is to be paid equally to the children until they reach their majority. As the children reach their majority, the husband may reduce the $100,000.00 coverage by one half until both children have reached age 18 at which time he may discontinue the insurance.
7. When the husband is earning above the self-support reserve of $135.00 per week net, he is obligated to pay one half of the cost of health-hospital plan premiums to cover the minor children and to share equally the unreimbursed excess expenses for medical, dental, ophthalmological, podiatric and psychiatric or therapists services.
 While the husband is unable to pay those amounts, the wife is to keep proper and appropriate records and give proper and appropriate notification to the husband of those costs. Those amounts that are not paid by the husband shall be deducted from his 20 per cent share of the proceeds of the house sale at the closing.
8. The court finds there is a support arrearage in the sum of $4,106.50. That amount, if not sooner paid, is to be paid by deducting that amount from the husband's share of the house proceeds.
9. The parties are to keep their personal property in their possession and all of their bank accounts and other items listed on their respective financial affidavits under assets as their sole and exclusive property.
10. The husband is to notify the wife of his current address CT Page 4838 and phone number prior to exercising his visitation rights.
11. The court allows the husband to receive the dependency exemption for federal income tax purposes for Lucille, and the wife will receive the exemption for Christina. Both parties are to cooperate with the Internal Revenue Service concerning the necessary documentation.
12. The wife's claims for relief do not request attorney's fees. Accordingly, none are awarded.
13. The debts of the parties as shown on their respective financial affidavits shall be their respective debts and they are responsible for those debts.
14. The husband shall hold the wife harmless from those debts shown on his financial affidavit.
15. Claims for relief suggested by the parties but not ordered by this court have been expressly rejected by this court as a result of all of the foregoing orders and the division of property as aforesaid.
EDWARD R. KARAZIN, JR., JUDGE